## IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, MARYLAND

**AJA BROOKS-WILLIAMS**
397 Lenlow Court, Apartment G
Glen Burnie, MD  21061

        **Plaintiff**

v.

**KEYBANK, NATIONAL
ASSOCIATION**
Serve On:
Christopher M. Gorman, Chairman & CEO
127 Public Square
Cleveland, Ohio  44114-1306

And

**EXPERIAN INFORMATION
SERVICES, INC.**
Serve On:
The Corporation Trust Incorporated,
    Resident Agent
351 West Camden Street
Baltimore, MD  21201-7912

        Defendants

Case No. _____

---

## COMPLAINT
### &
### REQUEST FOR TRIAL BY JURY

Plaintiff Aja Brooks-Williams ("Brooks" or "Pllaintiff"), by her attorneys, Phillip

Robinson, Jesse Iliff, and CONSUMER LAW CENTER LLC, hereby files this Complaint

1

against Defendant KeyBank, National Association ("KeyBank") and Experian Information Services, Inc. ("Experian") and states as follows:

## I.  INTRODUCTION

1.     In these instances, such as the underlying matter involving KeyBank, creditors place their interest above that of consumers like Brooks and unfairly and deceptively ignore their statutory and contractual duties and promises including those which are required for safe and sound banking practices.

2.     These practices are compounded when consumers, like Brooks in this case, try in good faith to resolve the situation but the creditor, i.e KeyBank in this instance, fails to act in good faith and knowingly and willfully acts to ignore the serious and material issues and merely blinds itself to the true status of its relationship with the consumer and simply repeats its admittedly prior improper and false assertions again. After their reasonable efforts to mitigate and resolve their relationship with the creditor are ignored, consumers like the Plaintiff are left with no other option but to seek the assistance of the Courts.

3.     The subject practices involved in this action include: (i) KeyBank's initial misclassification of the true status of certain Brooks' student loans in 2012 as delinquent and charged off when in fact the loans were qualified for an approved forbearance program by KeyBank and therefore were current; (ii) the utter failure of certain credit reporting agencies, including Experian, to properly correct the status of certain Brooks' student loans subject to this action even after receiving notification of the dispute and KeyBank admitted its error; (iii) the repeated violations by the Defendants of the Fair Credit Reporting Act,

15 U.S.C. § 1681, et seq. ("FCRA") in their illegal and willfully defective efforts to (a) collect an invalid consumer debt from Brooks and (b) report and investigate the status of Brooks' student loans; and (iv) the improper threats of debt collection and harassment taken by KeyBank, directly and indirectly through its authorized agents, to attempt to collect invalid debts from Brooks by asserting unlawful means and methods.

## II.  JURISDICTION AND VENUE

4.    This Court has jurisdiction asserted because the Defendants transact business and perform work, has interests in property and provides services in Maryland and Anne Arundel, County.  Defendant KeyBank even performs work in this Court, which it has utilized for its collection practices.

5.    Venue is appropriate in this district because the Defendant conducts business within Anne Arundel County directly and indirectly through its appointed agents including collection activities in this Court.

## III.  PARTIES

6.    Plaintiff Aja Brooks-Williams ("Brooks") is a resident of Anne Arundel, Maryland.  She resides at 397 Lenlow Court, Apartment G, Glen Burnie, MD 21061.. Previously from 2012 to earlier this year Brooks resided with her husband at 13922 King George Way in Upper Marlboro, MD 20772—the couple is now separated as of November 1, 2014.  Previously until March 2012 she resided at 11200 Lockwood Drive, Apartment 1909, Silver Spring, Maryland.  From June 1997 to March 2011 Brooks was a resident at 2470 Tiverton Lane, Cincinnati, Ohio 45231.

3

7.    Defendant KeyBank, National Association ("KeyBank") has executive offices located at 127 Public Square, Cleveland, Ohio 44114-1306.

8.    Defendant Experian Information Services, Inc. ("Experian") has a principal office at 505 City Parkway West, Orange, CA 92668. Experian operates as a consumer reporting agency as the term is defined by 15 U.S.C. § 1681(a)(f) of the FCRA.

9.    Not named as a party in this Complaint, America Education Services ("AES") is the affiliated agent/servicer of KeyBank. In all instances herein AES has acted as KeyBank's authorized agent and without the scope of that agency and as a result KeyBank is liable for the acts and omissions of AES related to Brooks at issue in the transactions described herein.

## IV.    FACTS

### A.    THE STUDENT LOAN CRISIS

10.    In the Dodd-Frank Wall Street Reform and Consumer Protection Act, Congress established an ombudsman for student loans within the Consumer Financial Protection Bureau ("CFPB") and the CFPB began accepting student loan complaints in March 2012. Last year the CFPB analyzed approximately 3,800 complaints and issued the Annual Report of the CFPB Student Loan Ombudsman (October 16, 2013). The Report made the following relevant comments to the issues in this action:

a.    Student loan servicers need to improve their resolution and dispute review procedures to aid borrowers trying to solve problems.

4

b. Borrowers often receive conflicting and misleading information from their representatives who have no authority to resolve the issue presented by the borrower.

c. Borrowers were placed into default while they believed and were in fact in deferment or forbearance on their loan.

d. KeyBank was identified as being in the top eight of private student loan companies for whom CFPB received consumer complaints.

11. The Annual Report of the CFPB Student Loan Ombudsman (October 16, 2014). The Report made the following relevant comments to the issues in this action based on an additional 5,300 complaints it received that were not analyzed in the prior report:

a. Negative credit reporting related to student loans makes it difficult for borrowers to pass employment screenings,

b. KeyBank remained in the top eight of private student loan companies for whom CFPB received consumer complaints.

**B. THE DEFENDANTS' LEGAL DUTIES RELATED TO THE SUBJECT TRANSACTION**

12. Under the Maryland common law, KeyBank owes the Plaintiff, as discussed infra, a duty of care due to the 'intimate nexus' which exists between the Plaintiff and the Defendant, a licensed real estate professional. This 'intimate nexus' arises from the relationship between a lay customer like the Plaintiff and the professional Defendant, characterized by the Plaintiff's reliance upon the accuracy of the professional's services to

5

her. *See 100 Investment Limited Partnership v. Columbia Town Center Title Co.*, 60 A.3d 1 (2013); *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527 (1986).

13.     As a national bank, KeyBank has agreed to act safely and soundly in the services it provides to borrowers like the Plaintiff. These duties are entirely consistent with KeyBank's statutory duties under the FCRA that prohibit KeyBank from furnishing (i) information to a credit reporting agency that it "knows or has reasonable cause to believe is inaccurate" (15 U.S.C. § 1681s-2(a)(1)(A)) and (ii) information it has been notified is inaccurate and in fact the information is untrue (15 U.S.C. § 1681s-2(a)(1(B)(i)(ii)).

14.     The Court of Appeals in 2005 recognized that a merchant who had no direct communication with a borrower nevertheless had a duty to a consumer under the Maryland Consumer Protection Act and Maryland common law to make a "reasonable investigation" of the true facts in the transaction on which the consumer (and other parties) would rely in order to complete the transaction. *Hoffman v. Stamper*, 385 Md. 1, 867 A.2d 276 (2005). Here, even if KeyBank had no direct communications with Brooks, its indirect efforts through AES and other authorized agents acting as debt collectors on its behalf negatively infected the true status of Brooks' student loans.

### C.     BACKGROUND ON THE PLAINTIFF'S PRIVATE STUDENT LOAN ACCOUNTS HELD THE DEFENDANT SUBJECT TO THIS ACTION

15.     While attending Cleveland State University for law school in the mid-2000s, Brooks agreed to take out several private student loans which were each utilized for personal, consumer purposes related to Brooks' educational expenses at her school.

6

16.     Each of Brooks loans, including those later acquired by KeyBank which are subject to this action, permitted Brooks and the lender and its assigns (including KeyBank) to agree to a forbearance of payments from time to time. Brooks reasonably relied upon the terms and conditions of each loan as offered and agreed upon and continues to do so through the present as exemplified by her payments to KeyBank and fulfillment of her other terms.

17.     As an assignee to each of Brooks' student loans subject to this action KeyBank obtained no greater rights in the underlying notes than its assignor granted to it.

18.     In April 2011 Brooks applied for a forbearance of each of her private school loans then serviced by American Education Services including each of the loans it serviced on behalf of KeyBank as its authorized collector/servicer.

19.     Beginning in late July 2012 and continuing throughout October 2012, KeyBank acting directly and indirectly through its network of authorized collectors, sought to collect invalid, defaulted sums from Brooks by calling Brooks' motion, family members, and even her employer at the United States Senate.

20.     On August 8, 2012 Brooks wrote to KeyBank, Transunion, Experian, and Equifax with a formal complaint about certain, inaccurate information reported in her credit files. These disputes identified KeyBank as the furnisher of the inaccurate information and the subject account numbers and requested that the credit reporting agencies and KeyBank conducted an investigation and made a correction to KeyBank's improperly "charged off" credit reporting of Brooks' loan(s) while in fact she was approved and in an approved forbearance program. Brooks also described in this correspondence details of her good

7

faith efforts to correct these errors which had simply fallen on deaf ears of all authorized representatives at KeyBank and its affiliates.

21.    The dispute notices identified in the proceeding paragraph were sent by certified mail. Brooks incurred expenses to mail these in the sum of approximately $20.

22.    On August 8, 2012 Brooks also filed a complaint against KeyBank with the CFPB.

23.    On August 16, 2012, KeyBank wrote to Brooks and promised her that it "[was] committed to providing [her] with excellent service" related to Brooks' inquiry to it related to acct ending in ****4001. Brooks reasonably relied upon this promise.

24.    About the same time in August 2012 and thereafter KeyBank and AES also communicated the knowingly false information about the true status of Brooks' loans to a series of debt collectors acting on their behalf including ASC and others. These collectors were demanding certain sums not validly due from Brooks and harassing Brooks, Brooks' then employer, and Brooks' friends in family members all in an attempt to collect sums not due since Brooks was current on her student loan debts and had correctly entered the forbearance program.

25.    On August 16, 2012, KeyBank also wrote to Brooks and promised her that it "[was] committed to providing [her] with excellent service" related to Brooks' inquiry to it related to acct ending in ****9512. Brooks reasonably relied upon this promise.

26.    On August 27, 2012, KeyBank's authorized Compliance and Quality Control Manager Eric Howe wrote to Brooks and represented to her that KeyBank understood that she had sustained frustration as a result of issues Brooks had raised to the CFPB about

8

KeyBank. Howe pledged to Brooks that KeyBank had "recalled" two of the subject loans it had referred to an outside collection agency and the accounts were now being handled by "KeyBank's in-house Collections Department." Brooks reasonably relied upon these promises by Howe on behalf of KeyBank.

27.     KeyBank's authorized Compliance and Quality Control Manager Eric Howe wrote again to Brooks on September 13, 2012 and made the following admissions:

      a.      "[Brooks"] had three (3) educational Loans with KeyBank and used a variety of deferral mechanisms offered by KeyBank." These are the same loans at issue in this litigation.

      b.      "At this juncture [i.e. the period of time subject to Brook's CFPB complaint], [Brooks] applied for relief under KeyBank's Forbearance program."

      c.      "You submitted the documentation KeyBank requested as part of its decision process.    Unfortunately, [Brooks'] documents were misplaced [by KeyBank] and [Brooks'] application was not processed."

      d.      "In the absence of [Brooks'] participation in the Forbearance program, the Loans were [improperly] charged-off for non-payment."

28.     As a result of KeyBank's admissions described in the proceeding paragraph which confirmed its debt collector harassment and false threats were made within the right to do so and sought invalid debts, KeyBank also promised Brooks through its authorized Compliance and Quality Control Manager Eric Howe that it would: (i) put the Loans into KeyBank's Forbearance program; (ii) reverse the charge-offs, and (iii) correct its previously false reporting to the credit reporting agencies within 60 days. Brooks

9

reasonably relied on these promises by KeyBank and anticipated that her problems would be resolved for the rest of time.

29. Despite Brooks' complaints and promised resolution in proceeding paragraph, neither KeyBank (and its authorized servicer American Education Services) nor Experian fulfilled their promises and apparently do not possess systems to ensure rereporting of false, negative reporting.

30. On or before May 15, 2014 KeyBank and its affiliated agent American Education Systems rereported to Experian that Brooks was in default or was otherwise delinquent from October 2011 through December 2011 when it knew, based on its prior admissions described above that she was current and her loans had been qualified for deferment and forbearance program by it.

31. Experian disclosed to Brooks the false and misleading information reported to it by KeyBank and its affiliated agent American Education Systems that is described in the proceeding paragraph in report number 0910-0296028

32. Brooks wrote to Experian on July 18, 2014 to dispute the false reporting, and sent copies of the correspondence to KeyBank and its affiliated agent American Education Systems at the same time, and requested that Experian delete and otherwise correct the false, negative reporting identified in the proceeding paragraph. Brooks incurred postal charges for this correspondence. In support of her request, Brooks provided Experian, KeyBank, and American Education Systems with the following information:

10

a.  Information about the damages and losses she was sustaining because of this continued publication of knowingly false and misleading information including damage to credit and emotional damages including embarrassment.

b.  Details about her prior disputes to Experian and KeyBank including details about the dates and contents of those disputes.

c.  KeyBank's prior admission, made on September 13, 2012, of its false reporting on the loans.

d.  Experian's acknowledgement of the prior disputes but failure to correct the previously recognized false information for an apparent period of two years.

33.  On July 23, 2014 at 10:08 A.M. American Education Services acknowledged receipt of Brooks' submission to it described in the proceeding paragraph.

34.  On July 30, 2014, KeyBank, through its authorized agent, American Education Services, knowingly wrote to Brooks and unfairly deceptively stated concerning account ending ****6356, that after her dispute to the credit reporting agencies concerning its false, derogatory furnished by KeyBank to them, that the information reported by KeyBank was "correct due to a period of delinquency that exists for the loan(s) listed on the reverse side of this letter...[i.e. Loan Program: LWACVR; Current Owner: KeyBank, NA; 1st Disb Date: 8/15/2005]. Upon information and belief, American Education Services knowingly and falsely reported to KeyBank that the disputed information was correct when KeyBank knew by its prior admissions discussed *supra* that it was not.

11

35.     Based upon the representations and statements made in the proceeding paragraph, neither KeyBank nor AES performed any reasonable investigation based upon Brooks July 18, 2014 dispute letters.

36.     Despite Brooks' documented complaint and evidence, Experien refused to correct all or part the false negative information described in ¶ 39 as of August 7, 2014 as it remained unchanged in Report Number 422-1899026 which described KeyBank's loans as "charged off" for extended periods in which it KeyBank had previously admitted were not charged off.

37.     Further, despite Brooks' documented complaint and evidence, Experien refused to correct the false negative information described in ¶ 31 as of August 11, 2014 as it reporting remained unchanged in Report Number 1048-2838-42 which described one of Brooks' KeyBank loans as remaining in past due in October and November 2011 when it was not.

38.     On or about August 14, 2014 Brooks contacted KeyBank's Credit Research Department to discuss the July 30, 2014 letter but it would not do so even though KeyBank is the purported owner of the loan.  Brooks attempted to direct the authorized representatives her prior correspondence but the representative refused and simply stated to contact American Education Services.  When Brooks contacted American Education Services shortly thereafter it said it was nothing it could do and only KeyBank could correct the problem.

39.     Left with nowhere else to turn since KeyBank and AES are simply pointing fingers at each other and neither responsibility for their errors, Brooks is initiating this

action. Brooks contacted the workout extension group at KeyBank on multiple occasions in an effort to mitigate invalid default issue. KeyBank and its agents continued to call Brooks' family and she was not able to get creditors to stop harassment even after it was aware of her written a complaint(s).

## E. DAMAGES AND LOSSES FOR BROOKS

40. The material omissions, misrepresentations, and false statements of KeyBank and Experian concerning the matters described above have caused actual damages to Brooks, and these damages and losses, detailed herein, are:

    a.   Brooks' economic damages including but not limited to (i) the sums she paid to send multiple dispute letters and communications to the Defendants in an attempt to resolve the re-reporting of false information; and (ii) higher interest rate for financing her vehicle than would have otherwise been available but for the false and negative classification of her student loans in November 2012;

    b.   Brooks' noneconomic damages include but are not limited to (i) damage to her credit by KeyBank's false and misleading credit reporting to the credit reporting bureaus and (ii) emotional damages and losses as a direct and proximate result of KeyBank's improper debt collection practices as well as its continued furnishing of false information directly and indirectly to others. Brooks' emotional damages and losses are exemplified by physical manifestations such as severe acne, embarrassment by having Keystone's debt collectors call her former employer at the U.S. Senate demanding

13

payments, worry, embarrassment, anxiety, anger, interference with family relationships, etc.;

c. Brooks' is also entitled to statutory and common law punitive damages under various statutory claims pled; and

d. Brooks' is also entitled to statutory damages under various statutory claims pled.

## COUNT I
### VIOLATION MARYLAND'S CONSUMER PROTECTION ACT,
### Md. Code Ann., Com. Law §13-101 et seq.
### &
### MARYLAND'S CONSUMER DEBT COLLECTION ACT ("MCDCA")
### Md. Code Ann., Com. Law § 14-201
### (Against KeyBank)

41.     Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

42.     The student loan servicing and collection activities described herein related to KeyBank, as set forth herein, are governed by the Consumer Protection Act, Md. Code Ann., Com. Law. § 13-101, *et seq.*

43.     Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The collection and student loan servicing of the student loans provided by KeyBank directly and indirectly through its authorized agents an employees and the threatened negative collection actions involves both the extension of credit and the collection of debts.

44.     The Maryland Consumer Protection Act defines unfair or deceptive trade practices to include, inter alia, the following:

14

> (a) False, falsely disparaging, or misleading oral or written statement, visual description or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.

Md. Code Ann., Com. Law § 13-301(1) and (3)

45.     KeyBank made materially false, misleading oral or written statements, omissions, or other representations related to the status of Brooks' student loans loan which had the capacity, tendency, or effect of deceiving or misleading Brooks in violation of Md. Code Ann., Com. Law § 13-301(1) including those described supra at ¶¶ 19, 23-28, 34, 38-39.

46.     KeyBank failed to state material facts directly and indirectly through authorized agents and employees, concerning or related to the true status of Brooks' loan and credit of her timely payments and status of her loans.

47.     Brooks reasonably relied upon the material acts and actions of the KeyBank as exemplified by ¶¶ 19, 23-28, 34, 38-39.

48.     Had KeyBank not acted unfairly and deceptively, Brooks would not have suffered the damages and losses described herein and exemplified at ¶¶ 3(iv), 40(a), 40(b)(ii).

49.     Brooks has pled sufficient facts to put KeyBank on notice as to the claims against it as exemplified by dates of key acts and representations of the KeyBank and its authorized agents, and the regulatory and statutory duties of KeyBank which were simply ignored and thereby infected the subject transaction to ensure its failure.

15

50. A violation of the MCDCA is also a violation of the MCPA. Md. Code Ann., Com. Law § 13-301(14)(iii).

51. The MCDCA prohibits "[i]n collecting or attempting to collect an alleged debt" by a collector such as KeyBank any "[c]claim, attempt, or threat[] to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8).

52. KeyBank claimed certain invalid sums due from Brooks that it knew were not in fact due and owing as described in ¶¶ 3, 19, 39 (and elsewhere herein). At all times relevant herein Brooks was current on her student loan obligations and there was no basis whatsoever for KeyBank to threaten Brooks with declaring her in default or demanding sums not due.

53. KeyBank's conduct and omissions, as set forth above, had the capacity, tendency or effect of deceiving and misleading Brooks, who has suffered economic and non-economic damages (including emotional distress and mental anguish). These damages are also more fully described in ¶¶ 3(iv), 40(a), 40(b)(ii). None of the damages and losses sought herein these claims under the MCDCA and MCPA arise from KeyBank's knowing and willful false reporting to the credit reporting agencies as described herein

WHEREFORE, Plaintiff respectfully requests the Court enter judgment in favor of Brooks and against KeyBank in a sum in excess of $75,000 for actual damages and losses (including economic and non-economic damages and losses); costs and attorney's fees incurred by Brooks; and grant Brooks such other and further relief as this court finds necessary and proper.

## COUNT II
### VIOLATION OF THE FAIR CREDIT REPORTING ACT ("FCRA"), 15 U.S.C. § 1681, *et seq.*

(Against KeyBank only)

54.    Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

55.    Brooks became aware that KeyBank was falsely reporting to one or more of the credit bureaus false, negative reporting on the status of her student loans stating that she was not current when in fact she was current and KeyBank had admitted the same to her and had accepted each of her timely payments and retained them for its benefit.

56.    On or about August 2, 2012 and again on July 18, 2014 Brooks wrote dispute letters to each of the three credit bureaus disputing the knowingly negative, and false reporting concerning the status of Brooks' student loans owned by KeyBank.

57.    While KeyBank acknowledged receipt of the FCRA dispute letters, it failed to then perform any reasonable investigation as required under the FCRA.

58.    It was materially misleading for a furnisher and student loan servicer/owner like KeyBank to continue to knowingly and willfully report to any credit reporting agency inaccurate information about Brooks and fail to even timely admit the error when it finally confirms what Brooks has been telling it for months. Further, even after previously finally admitting its error, it is knowingly and willfully wrong for KeyBank to rereport the same or similar information it previously correct because it admitted the information was false.

59.    KeyBank conducted an unreasonable investigation to Brooks' FCRA dispute letters to it and the CRAs in violation of the FCRA. It had in its records and accounts

17

documentation concerning the true status of brooks' loans and its prior representations but failed to apparently did not even look at its own correspondence to Brooks.

60.    Upon information and belief KeyBank never reported the results of any bona-fide investigation it took as required by 15 U.S.C. § 1681s-2(b)(1)(C) to the CRAs since it never reported to Brooks herself the result of any investigation.

WHEREFORE, as a direct and proximate result of KeyBank's violations of duties under the FCRA, Plaintiff respectfully requests the Court enter judgment in favor of Plaintiff and against Defendant  KeyBank(i) pursuant to 15 U.S.C. § 1681n for actual damages, including damage to credit, of not less than $50,000, punitive damages in a sum as the Court may allow but no less than $25,000, costs and attorney's fees incurred by Plaintiff; or alternatively (ii) pursuant to pursuant to 15 U.S.C. § 1681n for actual damages of not less than $50,000, costs, and attorney fees.

## COUNT III — VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA)

### *(Against EXPERIAN only)*

61.    Plaintiff adopts by reference the averments contained in the preceding paragraphs of this Complaint with the same effect as if herein fully set forth.

62.    EXPERIAN violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it maintains and published concerning Brooks.

63.    EXPERIAN violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Brooks' credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to

18

KeyBank; by failing to maintain reasonable procedures with which to filter and verify disputed information in Brooks' credit file; and by relying upon verification from a source it has reason to know is unreliable.

64.     As a result of the conduct, action, and inaction of EXPERIAN, Brooks suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

65.     EXPERIAN's conduct, action, and inaction was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Brooks to recover under 15 U.S.C. § 1681o.

**WHEREFORE**, Plaintiff Brooks demands judgment against Defendant Experian Information Solutions, Inc., for: compensatory damages in an amount in an amount of not less than $40,000 to be determined by the fact finder; punitive damages in an amount to be determined by the Court; the Plaintiff's reasonable attorney fees; and the costs of this litigation.

### COUNT IV
### DEFAMATION
*(Against KeyBank Only)*

66. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

67. Beginning on or about May 15, 2014 and thereafter (and perhaps prior to) KeyBank made a series of false and misleading statements to Brooks, AES, Experian, and others that Brooks had been past due on her student loans during certain periods of time

19

when it knew she was not.

68.     KeyBank wrote and published these claims in correspondence and in written communications with various agencies and persons who it knew would utilize the information. These statements were defamatory in tending to injure Brooks in her effort to be a responsible consumer. These knowingly false statement were designed to impugning Brooks to be a poor credit risk to potential new creditors and to, in effect, not to be a good credit risk.

69.     In its written and oral representations, KeyBank knowingly made the aforementioned false and defamatory statements about Brooks.

70.     In the alternative, KeyBank negligently made the aforementioned false and defamatory statements about Brooks.

71.     KeyBank published these false and defamatory statements to Brooks, the credit reporting agencies, and others including AES. These individuals and persons understood the statements to be defamatory.

72.     KeyBank acted with knowledge of the falsity of the statements and with the intent to harm Brooks' ability to access further credit. As a result of the false and defamatory statements published by KeyBank, the character and reputation of Brooks was impaired as a direct and proximate result of KeyBank's false and defamatory reports and statements. In addition, Brooks' reputation in the community was impaired and she suffered metal anguish and personal humiliation and injuries and losses as described herein. These issues are compounded by the facts that KeyBank's recent false statements were

20

made after it previously acknowledged in writing that it had previously made errors concerning the same information.

73.   As a direct and proximate result of the false and defamatory statements and reports of KeyBank concerning the true status of Brooks' loan, Brooks' has sustained damages and losses described herein.

WHEREFORE, Brooks demands judgment in her favor against KeyBank in an amount in excess of $75,000 in compensatory and punitive damages, plus interest and costs.

Respectfully Submitted,

Phillip R. Robinson
Jesse Iliff
Consumer Law Center LLC
8737 Colesville Road, Suite 307
Silver Spring, MD 20910
Phone:   (410) 645-7122
             (301) 637-6270
Email: phillip@marylandconsumer.com
*Attorneys for Plaintiff*

21

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all claims and disputed facts herein.

Phillip Robinson